BRANDON J. HARRISON, Judge
In 2016, a Ouachita County jury convicted Tommy Lee Radford on two counts of threatening a judicial officer and one count of terroristic threatening. Radford challenges the sufficiency of the State's evidence against him. He also argues that his constitutional right to a speedy trial was violated. None of Radford's arguments are preserved for review, so we must affirm his conviction without addressing the merit of his points. Although he did not challenge the length of his sentence (95 years) in this appeal, it is illegal on its face. The problem, in a nutshell, is that the sentence is too long given the habitual status that is checked on the sentencing order. More on this later. A facially illegal sentence is a matter that we routinely address on our own initiative. The conviction on every count is affirmed; but we remand the case to the circuit court for resentencing.
I.
The State's case against Radford is based on Radford's conduct after he appeared before a circuit judge, in a different criminal case, regarding a bond decision. In this case, the State's proof rests primarily on Camden police officer Ben Opelt's testimony. Officer Opelt testified that on 26 January 2015, Radford became "upset" after circuit judge Edwin A. Keaton set a $50,000 secured bond in a criminal case against Radford. Officer Opelt told the jury about vulgar verbal statements and obscene gestures that Radford had repeatedly made after exiting the courtroom once the bond decision had been made. The bad behavior escalated as the officer and Radford entered the jail portion of the court building.
A person commits the offense of first-degree terroristic threatening if, with the purpose of terrorizing another person, he or she threatens to cause death or serious physical injury to another person. Ark. Code Ann. § 5-13-301(a)(1)(A) (Repl. 2013). A person acts with purpose with respect to the results of his conduct when it is his or her conscious object to cause the results. Ark. Code Ann. § 5-2-202. "Serious physical injury" means a physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102.
Ark. Code Ann. § 5-53-202 makes threatening a judicial officer a crime:
(a) A person commits the offense of threatening a judicial official or juror if the person directly or indirectly utters or otherwise makes a threat toward another person whom the person knows or should know to be a:
(1) Judicial official;
(2) Juror; or *896 (3) Member of the immediate family of a judicial official or juror.
(b)(1) Threatening a judicial official or juror is a Class B felony if the person threatens:
(A) To cause death or serious physical injury to a judicial official, juror, or any member of a judicial official's or juror's immediate family; or
(B) Substantial damage to property owned or possessed by a judicial official, juror, or any member of a judicial official's or juror's immediate family.
(2) Threatening a judicial official or juror is a Class C felony if the person threatens:
(A) To cause physical injury to a judicial official, juror, or any member of a judicial official's or juror's immediate family; or
(B) Damage to property owned or possessed by a judicial official, juror, or any member of a judicial official's or juror's immediate family.
(c) It is an affirmative defense to any prosecution under this subchapter that at the time the defendant engaged in the conduct, the threat did not relate to the person's status or actions as a:
(1) Judicial official;
(2) Juror; or
(3) Member of the immediate family of a judicial official or juror.
"Immediate family" means the spouse or child of a judicial official or juror. Ark. Code Ann. § 5-53-201(1). The definition of "judicial official" includes any district judge or circuit judge. Ark. Code Ann. § 5-53-201(2). "Threat" means a menace, however communicated, to use physical force against any person or harm substantially any person with respect to his or her property, health, safety, business, calling, career, financial condition, reputation, or a personal relationship. Ark. Code Ann. § 5-53-101(6).
We must first decide whether Radford's motion for a directed verdict is preserved for appellate review. To preserve a sufficiency-of-the-evidence challenge on appeal the defendant must make a clear and specific motion for directed verdict to the circuit court. Williamson v. State , 2009 Ark. 568, at 4-5, 350 S.W.3d 787, 789-90 ; Ark. R. Crim. P. 33.1(c). At the close of the State's case, Radford made this motion:
Your Honor, at this time I would move for a directed verdict on the two counts of threatening a judicial officer, on each count, I don't think the State has proved his intent, intent to terrorize or threaten. The State just proved that he was angry. I don't think he was, there was any intent to terrorize or to threaten a judicial officer or to make a threat of serious physical injury to a judicial officer or to a relative of a judicial officer, immediate family member of a judicial officer.
As far as terroristic threatening, I don't think the State can, the State has proven that he had the purpose to terrorize that person or cause physical injury or serious physical injury, death or serious physical injury to another person.... Even if they did prove rape, I don't think rape would be considered a serious physical injury.
Defense counsel then asked the court "to go back and strike" his argument that rape could not be considered a serious physical injury, which the court did. The court denied the directed-verdict motion:
As to the two counts of threatening a judicial officer, [the prosecuting attorney] is correct that the statute is clear that it be direct threat of serious physical injury. And one of those threats was made toward Judge Keaton and one was made towards his wife. And so, the motion *897 will be denied as to those two counts. And as to terroristic threatening, as to Officer Opelt, the State has also met its burden as to the comments that were directed towards Officer Opelt. So the motion is denied.
When the case closed, Radford renewed his directed-verdict motion "word for word from the previous, except for the part [his counsel] asked to be stricken." The circuit court denied the renewed motion.
Radford raises five arguments here: (1) there was insufficient evidence that he communicated a threat under Ark. Code Ann. § 5-53-101(6) ; (2) there was insufficient evidence that he threatened to cause death, physical injury, or property damage; (3) there was insufficient evidence that Judge Keaton had a wife or that Radford knew or should have known he had a wife; (4) his threatening-a-judicial-officer convictions should be reduced to Class C felonies because there was no proof of a threat of death or serious physical injury; and (5) there was insufficient evidence to support his terroristic-threat conviction because a threat to rape someone does not equate to a threat to cause serious physical injury under Inskeep v. State , 2016 Ark. App. 135, 484 S.W.3d 709.
We hold that Radford's sufficiency challenges to the charges for a judicial officer and for a judicial officer's immediate family member, listed as numbers 1-4 above, are not preserved for review because he failed to make these specific arguments to the circuit court. The sole argument he made in his directed-verdict motion was that the State failed to prove that he had an "intent" to threaten Judge Keaton and his "immediately family member." This is a different argument than the four arguments he makes on appeal. The directed-verdict motion targeting the terroristic-threatening charge is not preserved because the circuit court struck counsel's argument (at counsel's request) that rape could not be considered a serious physical injury.
II.
Radford argues that the charges should have been dismissed because his speedy-trial rights were violated. He concedes that he has raised this issue for the first time on appeal and that there is case law holding that speedy-trial issues cannot be raised for the first time on appeal. But in Radford's view there are some statements in the cases that treat the speedy-trial issue as one of "subject matter jurisdiction," an issue that may be raised for the first time on appeal. He asks us to use the criteria that the United States Supreme Court set forth in Barker v. Wingo , 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to decide whether his speedy-trial claim is timely and meritorious.
Radford is correct that some case law has termed a Rule 28.1 violation as being "jurisdictional." See, e.g. , Rhodes v. Capeheart , 313 Ark. 16, 17, 852 S.W.2d 118, 119 (1993) ("Arkansas R. Crim. P. 28.1 is jurisdictional inasmuch as it requires a defendant to be brought to trial within twelve months or be absolutely discharged pursuant to Ark. R. Crim. P. 30.1(a)."). But those cases are distinguishable. First, the cases that call a speedy-trial violation "jurisdictional" were presented as extraordinary writs to address violations outside the direct-appeal route. Id. ; Moody v. Ark. Cty. Circuit Court, S. Dist. , 350 Ark. 176, 85 S.W.3d 534 (2002). Other "jurisdictional" speedy-trial cases addressed appeals from lower courts to circuit courts. See State v. Vaughan , 343 Ark. 293, 295, 33 S.W.3d 512, 513 (2000) ("With regard to the trial court's jurisdiction to decide the speedy trial issue, that issue is one that can be raised at any time, even for the first time on appeal.") (citing *898 Ibsen v. Plegge , 341 Ark. 225, 15 S.W.3d 686 (2000) ); see also Ark. Dist. Ct. R. 9 (appeals from district court to circuit court are de novo). While possible outliers exist-depending on how finely one draws the boundary line-our supreme court has held, since Wingo , that a defendant who fails to raise a speedy-trial violation to the circuit court is procedurally barred from raising it here. See, e.g. , Green v. State , 313 Ark. 87, 92, 852 S.W.2d 110, 113 (1993) ("We do not reach the merits of appellant's speedy trial argument because he never raised this argument to the trial court. We have stated time and time again that we do not consider arguments raised for the first time on appeal, and even speedy trial arguments must be so raised.").
Our supreme court decided Green after the United States Supreme Court issued Wingo . In Green , our supreme court did not use Wingo 's four-part balancing test to decide whether Green could raise his speedy-trial issue for the first time on appeal. Our supreme court has also recently stated in dictum that Arkansas's speedy-trial case law does not conflict with Wingo . State v. Owens , 2017 Ark. 362, at 4, 533 S.W.3d 582, 584-85. This is important because the supreme court reaffirmed in Owens that it is the circuit courts' task to make an admittedly "ad hoc" determination whether a defendant's right to a speedy trial was violated. Id. at 5.
Radford never argued to the circuit court that his speedy-trial right had been violated. Given our supreme court's holding in Green , and the strong dicta in Owens , we hold that we may not decide Radford's speedy-trial argument for the first time on appeal.
III.
Now, back to the illegal sentence. As we stated at the outset, we may, and routinely do, highlight illegal sentences on our own initiative. Barber v. State , 2016 Ark. 54, at 10, 482 S.W.3d 314, 322. A sentence is illegal on its face when it exceeds the maximum punishment a governing statute allows given the defendant's convictions. Williams v. State , 2016 Ark. 16, at 3, 479 S.W.3d 544, 545.
Here is the problem in this case. The sentencing range for a Class B felony is five to twenty years' imprisonment. Ark. Code Ann. § 5-4-401(a)(3). The final sentencing order that the circuit court entered shows that Radford's sentence was enhanced by Ark. Code Ann. § 5-4-501, subsection (a) -which increases a sentence when a defendant has more than one, but fewer than four, felonies. See Ark. Code Ann. § 5-4-501(a)(1)-(2). Regarding a Class B felony conviction, subsection (a) increases Radford's potential punishment to a term of imprisonment of at least five, but not more than thirty, years on each of the two Class B felony counts for which he was convicted. Ark. Code Ann. § 5- 4-501(a)(2)(C). Because Radford received forty years on each count of threatening a judicial officer, his sentence is above the statutory range and therefore illegal.
The same defect exists on Radford's first-degree terroristic-threatening conviction, a Class D felony. The maximum time allowed for a Class D felony under section 5-4-401(a) is six years' imprisonment. Ark. Code Ann. § 5-4-401(a)(6). Radford's terrorist-threatening conviction was increased by Ark. Code Ann. § 5-4-501(a), the same subsection under which his term of imprisonment was increased on the two Class B convictions. For Class D felonies, subsection 5-4-501(a) increases the imprisonment term not more than twelve years. Ark. Code Ann. § 5-4-501(a)(2)(E). But Radford was sentenced to fifteen years, three years longer than the statutory maximum permits, a facially illegal sentence.
*899 Some case law from our supreme court permits this court to correct sentencing errors if the illegal sentence has nothing to do with the guilt phase. See, e.g. , Harness v. State , 352 Ark. 335, 339, 101 S.W.3d 235, 238 (2003). We decline to exercise that option in this case and instead remand it to the circuit court for resentencing. The illegal sentence does not relate directly to the guilt phase. Nonetheless, we choose to remand for resentencing because it is not clear how many of Radford's prior convictions the circuit court decided could be used to increase his sentence.
Our supreme court has written the following on sentencing procedure and process:
The correct statutory procedure in a bifurcated trial is, after a finding of guilt, for the trial court to hold a hearing, out of the presence of the jury, to determine the number of prior convictions and to then instruct the jury as to the number to be considered by them in fixing the punishment. Although evidence of prior convictions is made a part of the record for appeal purposes, such material is not introduced into evidence to be considered by the jury.
Graham v. State , 290 Ark. 107, 112, 717 S.W.2d 203, 205 (1986). "The issue of the number of prior convictions is a matter of law, not a matter of fact." McGirt v. State , 289 Ark. 7, 12, 708 S.W.2d 620, 623 (1986).
With some general principles stated, we look to what happened in the circuit court during the sentencing phase. After the jury was polled on its verdict, the circuit judge said,
I'm going to read some instructions to you about the sentencing phase, and then the parties will have the opportunity to submit additional evidence.... It is my duty to instruct you that Tommy Radford has eight felony convictions and is classified as a habitual offender.
The prosecutor presented evidence to the jury of "mostly felonies," although the prosecutor also detailed Radford's misdemeanors, numerous district-court convictions, and some charges the State had abandoned.
State's exhibit no. 2 shows that on 27 January 1998, Radford pleaded guilty to five felonies: (1) second-degree murder, (2) burglary, (3) second-degree battery, (4) theft, and (5) first-degree criminal mischief. Felonies six and seven occurred in 2008, when Radford pleaded guilty to two counts of second-degree sexual assault. The eighth one appeared when Radford pleaded guilty to residential burglary in 2014. Radford neither objected to how the sentencing phase was conducted overall, nor to the specific issue of the number of felonies the jury should have been allowed to consider under the habitual-offender statute.
As we see it, however, one problem is that the court's oral ruling and its written order conflict. The court's oral ruling stated that Radford had eight prior convictions; but its written order reflects a finding of more than one, but fewer than four, felonies under Ark. Code Ann. § 5-4-501(a). A discrepancy between the oral ruling and the subsequent written order is decided in favor of the written order. Vance v. State , 2011 Ark. 243, at 35, 383 S.W.3d 325, 347. Although clerical errors in a sentencing order do not prevent it from being enforced, we cannot tell if the error here is substantive or clerical.
Determining the number and types of felonies that can affect sentencing under *900 Ark. Code Ann. § 5-4-501 (the habitual-offender statute) can become complex for reasons we do not need to delve into today. Suffice it to say that the circuit court is often the best place to clear up sentencing issues.
Affirmed in part; remanded in part for resentencing.
Gruber, C.J., and Glover, J., agree.