2010 Ark. 294

**STATE of Arkansas, Appellant,**

v.

**Jaret THOMPSON, Appellee.**

**No. CR 10–18.**

Supreme Court of Arkansas.

June 17, 2010.

Dustin McDaniel, Atty. Gen., Jake H. Jones, Little Rock, AR, for appellant.

PAUL E. DANIELSON, Justice.

Appellant State of Arkansas appeals from the circuit court's order granting a motion to suppress evidence in favor of appellee Jaret Thompson. The State's sole point on appeal is that the circuit court erred in granting Thompson's motion to suppress evidence discovered following a canine sniff of his vehicle that was validly detained. Thompson did not file a response. We agree with the State and reverse and remand.

The record reveals the following facts. On April 9, 2009, Sergeant Chris Chapmond, with the Hot Springs Police Drug Task Force, received a tip that Thompson was selling illegal narcotics from his truck in the parking lot of the National Park Medical Center's emergency room. Upon arrival to the hospital, Chapmond saw the vehicle, which matched the description that he had been given leaving the parking lot. Chapmond had called fellow Officer Kenneth Kizer for assistance in surveillance. As Officer Kizer was leaving the Hot Springs Police Department, he spotted the truck. Officer Kizer followed the vehicle and then observed it veer left of the center

line. Officer Kizer initiated a traffic stop, and as he approached the vehicle, he detected a strong odor of intoxicants emitting from the vehicle and also noticed an open container.

Officer Kizer asked Thompson to exit the vehicle for the purpose of performing field sobriety tests. At that time, Sergeant Chapmond pulled up behind Officer Kizer. As Officer Kizer was concluding the field sobriety tests, Officer Michael Jones arrived on the scene with "Nero," the police drug dog. Sergeant Chapmond told Officer Jones that Thompson was acting suspicious and asked Jones to run Nero around Thompson's vehicle. Officer Jones did so as Officer Kizer wrote the citation for driving left of center. Nero then gave Officer Jones a positive alert on the driver's side door. A subsequent, on-the-spot search of Thompson's vehicle uncovered a large amount of pseudoephedrine.

The State charged Thompson with possession with intent to manufacture—unlawful distribution. On September 1, 2009, Thompson moved to suppress the evidence, alleging that it was seized in violation of both article 2, section 15 of the Arkansas Constitution and the Fourth Amendment to the United States Constitution. The State responded that, because Officer Kizer had probable cause to make a traffic stop, it was reasonable to stop Thompson's vehicle under both Arkansas and federal constitutional law and that the officer's immediate use of the canine around the vehicle and a positive alert from Nero gave him probable cause to search it.

|₃After a suppression hearing was held, the circuit court suppressed the evidence, concluding that "the sole basis for the search of the Defendant's vehicle was the positive alert by the canine and that this alone is insufficient to provide justification for the search." The State now appeals the circuit court's order granting the motion to suppress the evidence.

Prior to examining the merits of any state appeal, we must first determine whether it is a proper state appeal. Arkansas Rule of Appellate Procedure—Criminal 3(a)(1) provides that "[a]n interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R.Crim. P[.] 16.2 to suppress seized evidence[.]" Ark. R.App. P.-Crim. 3(a)(1) (2010). The rule further states:

> (c) When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, *and that the correct and uniform administration of the criminal law requires review by the Supreme Court*, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R.App. P.-Crim. 3(c) (emphasis added).

As this court has frequently observed, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. *See State v. Jones*, 369 Ark. 195, 252 S.W.3d 119 (2007) (citing *State v. Nichols*, 364 Ark. 1, 216 S.W.3d 114 (2005)). The former is a matter of right, whereas the latter is not derived from the

Constitution, nor is it a matter of right, but is granted pursuant to Ark. R.App. P.-Crim. 3. *See id.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *See id.*

As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. *See Jones, supra* (citing *State v. Pittman*, 360 Ark. 273, 200 S.W.3d 893 (2005)). We do not permit State appeals merely to demonstrate the fact that the circuit court erred. *See id.* Thus, where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *See id.* Similarly, where the resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramifications, and the matter is not appealable by the State. *See id.* Finally, where an appeal raises an issue of the application, not interpretation, of a criminal rule or statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State under Rule 3. *See id.*

The issue presented in the instant case is whether the circuit court erroneously concluded that a positive alert from a canine sniff standing alone does not constitute probable cause to subsequently search a vehicle. We conclude that this appeal does present an issue involving the interpretation of our criminal rules and will have widespread ramifications because it will provide guidance to our law enforcement officers and our courts as to the law in our state when faced with similar circumstances in the future. *See State v. Mancia–Sandoval*, 2010 Ark. 134, 361 S.W.3d 835. Therefore, we accept this case as a proper state appeal.

The State argues that the circuit court erred in suppressing the evidence because a warrantless search of a lawfully detained vehicle, based on a positive alert by a reliable police dog, violates neither the United States nor the Arkansas Constitution. On review of a suppression challenge, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *See id.*

In the instant case, the circuit court did not find that the stop of Thompson's vehicle was invalid. Additionally, there was no finding that the officers erred in conducting the dog sniff of the vehicle. The circuit court simply found that after the positive alert by the canine, there was not an additional reason to search Thompson's vehicle. However, such a requirement does not exist. While this court has never decided if a positive alert following a dog sniff, standing alone, provides probable cause to search, we have guidance from the federal courts and our own court of appeals.

In *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001), the dog sniff was bolstered by other facts; however, this court noted the following:

> According to the Eighth Circuit Court of Appeals, a dog sniff that results in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs within the item, if the dog is reliable. *United States v. Sundby*, 186 F.3d 873 (8th Cir.1999); *United States v. Bloomfield*, 40 F.3d 910 (8th Cir.1994). *See*

*also Newton v. State*, 73 Ark. App. 285, 43 S.W.3d 170 (2001). In *Sundby*, the Eighth Circuit stated:

> A dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance if the dog is reliable. To establish the dog's reliability, the affidavit need only state the dog has been trained and certified to detect drugs. An affidavit need not give a detailed account of the dog's track record or education.

*Sundby*, 186 F.3d at 876 (cases omitted). *Laime*, 347 Ark. at 159, 60 S.W.3d at 476. The holding from *Sundby* as to dog sniffs is still cited by the Eighth Circuit. *See United States v. Olivera–Mendez*, 484 F.3d 505 (8th Cir.2007).

Similarly, our court of appeals has held the following:

> [W]hen an officer has a police dog at his immediate disposal, a motorist's detention may be briefly extended for a canine sniff of the vehicle in the absence of reasonable suspicion without violating the Fourth Amendment. Once a canine dog alerts, an officer has probable cause to suspect the presence of illegal contraband.

*Miller v. State*, 81 Ark. App. 401, 411–12, 102 S.W.3d 896, 902 (2003) (citing *Willoughby v. State*, 76 Ark. App. 329, 65 S.W.3d 453 (2002)). *See also Newton v. State, supra.*

Here, Officer Jones testified as to Nero's reliability and confirmed that his training records had been maintained. There was no challenge to the dog's reliability. Therefore, once Nero gave a positive alert on Thompson's vehicle, there was probable cause for the officers to conduct a search, and there was no violation of the Fourth Amendment.[1]

For the foregoing reason, the circuit court erred in finding that the officers needed an additional reason to search Thompson's vehicle and erred by granting Thompson's motion to suppress. We, therefore, reverse and remand.

Reversed and remanded.

CORBIN, J., not participating.

---

1. While Thompson relied on both the United States Constitution and the Arkansas Constitution in his motion to suppress, the circuit court did not specify the basis for its ruling. Additionally, the instant case is not the appropriate case to examine whether the search-and-seizure language of article 2, section 15, of the Arkansas Constitution should be interpreted to provide greater protection than the federal interpretation of the Fourth Amendment as that issue was not sufficiently developed on appeal and full adversarial development is lacking. *See Williams v. Johnson Custom Homes*, 374 Ark. 457, 288 S.W.3d 607 (2008) (citing *Drummond v. State*, 320 Ark. 385, 897 S.W.2d 553 (1995)). *See also State v. Harris*, 372 Ark. 492, 277 S.W.3d 568 (2008). We note, however, that this court has previously declined to extend our holding in *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004), to the search of a vehicle. *See Welch v. State*, 364 Ark. 324, 219 S.W.3d 156 (2005).